Robert J. Randolph, Appellant, *v.* John Loughlin, impleaded, etc., Respondent.

Where, in an action upon a written instrument, the issue is as to the genuineness of the signature thereto, other papers executed by defendant, the signatures to which are conceded to be genuine, but which are not properly in evidence for other purposes, cannot be received in evidence or submitted to the jury to enable them to compare the signatures, and thus draw a conclusion as to the genuineness of the one in question.

(Argued January 3, 1872; decided May term, 1872.)

Appeal from order of the General Term of the Supreme Court, in the second judicial district, reversing a judgment in favor of the plaintiff entered upon a verdict and reversing an order denying a new trial, and granting a new trial.

The action was upon a promissory note alleged to have

been executed by defendant John Loughlin; defendant denied the making of the note. The facts are sufficiently stated in the opinion.

*Joshua M. Van Cott* for the appellant. Defendant is liable if he adopted the signature or so conducted himself as to induce plaintiff to rely upon it. (*Morriss* v. *Bethell*, L. R., 5 Com. Pleas, 50; *Weed* v. *Carpenter*, 10 Wend., 403; *Hazard* v. *Spears*, 4 Keyes, 482.) The jury were correctly instructed to compare the notes to determine the genuineness of the one in suit. (*Dubois* v. *Baker*, 30 N. Y., 355; 1 Greenleaf's Ev., § 578; *Doe* v. *Newton*, 5 Adolph & Ellis, 514; *Van Wyck* v. *McIntosh*, 4 Ker., 442.) The reversal was for a supposed error of law. (*Marco* v. *Liverpool & London Ins. Co.*, 35 N. Y. R., 664; *Baldwin* v. *Van Deusen*, 37 N. Y., 487.) The signatures were not before the General Term, and that court was not in a situation to revise the judgment of the jury on the question of fact. (*Birdsall* v. *Russell*, 29 N. Y., 241–244.)

*E. M. Cullen* for the respondent. The court erred in admitting the notes in evidence and in permitting them to be given to the jury for the purpose of comparison. (*Van Wyck* v. *McIntosh*, 4 N. Y., 439.)

EARL, C. The sole controversy upon the trial of this action was whether the respondent executed the note in suit, or whether his signature to it was a forgery. Upon this question there was very little, if any, competent evidence showing that he executed the note, and the evidence was very strong that he did not.

The Special Term was authorized to review the findings of the jury upon questions of fact under section 256 of the Code, and, upon the appeal to the General Term from the order of the Special Term, the General Term had the same authority. But if the General Term granted a new trial upon questions of fact, no appeal could be taken to the Court of Appeals

from the order granting the new trial. This is finally settled by the Court of Appeals in the case of *Wright* v. *Hunter*, decided November, 1871 (since reported in 46 N. Y., 409), in which Judge RAPALLO, writing the opinion of the court, has carefully reviewed the various provisions of the Code and the prior decisions upon the subject. Must the General Term, in this case, be presumed to have granted the order setting aside the verdict and for a new trial upon questions of fact? The rule to determine this, as laid down in the case above cited, is this : When the new trial is granted in a case which involves only questions of law, or in which the General Term has no right to review the questions of fact, the Court of Appeals will presume that questions of law were exclusively considered at the General Term, and will consider such questions. But where questions of fact were involved, and the case was such, and was before the General Term in such form that it could review the questions of fact, and hence may have granted a new trial upon questions of fact, an appeal to the Court of Appeals brings up nothing for review, and hence is improper and unauthorized.

This case was properly before the General Term for review upon the facts, and it was a case in which a new trial may have been granted upon the facts. The opinion delivered at General Term shows that one of the reasons, and the principal one, for granting a new trial was, that there was not competent evidence to establish the fact that the respondent executed the note in suit.

Hence we might hold that there was nothing before us for review, and dismiss the appeal ; but the point was not discussed or taken in the argument before us, and hence we have concluded to dispose of the case upon the merits.

The suit was upon a single note purporting to have been made by the respondent, the signature to which he claimed to be a forgery. The plaintiff was permitted, against the respondent's objection upon the trial, to put other notes in evidence purporting to be made by him, the signatures to some of which were admitted to be genuine, and to others claimed to

be forgeries. I am unable to see how these other notes were competent evidence, and what possible bearing they could have upon the issues upon trial. As they were not competent evidence for any other purpose, they could not be received in evidence to enable the jury to compare the signatures to them with the signature to the note in suit. That such evidence is incompetent is well settled. ( *Van Wyck* v. *McIntosh*, 14 N. Y., 439 ; *Dubois* v. *Baker*, 30 N. Y. 355.)

The court permitted the counsel for plaintiff to deliver four notes, besides the one in suit, to the jury, and charged them, among other things, as follows : " One of the principal questions for you to consider will be, was the note made by the defendant in person ? The defendant, Bishop Loughlin, positively denies this, and the plaintiff has sought to disprove this denial, claiming that the note and signature are in the proper handwriting of the defendant, and that this appears from comparison with the handwriting of other notes and their signatures, proved in the case and acknowledged as genuine, such as notes B and C. You are to make such comparison, and determine whether the resemblance is so perfect and exact as to convince you of the genuineness of the signature, notwithstanding the defendant's positive denial." This charge was clearly erroneous.

The General Term, therefore, committed no error in granting a new trial, and its order must be affirmed, and judgment absolute rendered against the plaintiff, with costs.

LEONARD, C. When the case was rested on the part of the plaintiff, there was no evidence of the making of the note in suit. That was the issue to be proven. The defendant by his answer denied that he made it. Although the defendant did not think proper to submit his case on the evidence as it then stood, the subsequent testimony did not prove the making of the note. The defendant, as a witness in his own behalf, testified that he did not make or authorize it. The plaintiff endeavored to prove sufficient to authorize the case to go to the jury, by an examination of the defendant. Two

notes, of $1,500 each, were shown to him, one dated the 6th and another the 22d of October, 1863; and on inquiry by the plaintiff he testified that the body and signatures were all written by him.  Two other notes, for $1,500 each, dated January 22d, 1864, were shown to the defendant, and he was asked to look at the body of those notes, and also at the body of the note in suit, and say whether they were in the same handwriting; and also whether the signature " J. Loughlin," by whom they purported to be signed as maker, were in the same handwriting.  An objection to these inquiries was overruled and the defendant excepted.  The defendant answered that he could only judge by comparison, and from that he should judge that they resembled each other.

The defendant was then asked if the two notes dated in January, 1864, were presented to him by Mr. Bergen, as notary, for payment.  Objection having been overruled and exception taken, he answered that he did not recollect anything of the kind happening.  Mr. Bergen testified, as a witness for the plaintiff, that he presented the notes to the defendant, and said to him, " These are your notes;" to which the defendant replied, " I know it, but O'Donnell will pay them; take them to him."

The two notes last mentioned were then read in evidence, against an objection and exception taken by the defendant.

It is entirely clear that not one word of this evidence was material or competent.  When the case was submitted to the jury the judge told them they might compare the note in suit with the notes dated in October, 1863, and determine whether the resemblance was so exact and perfect as to convince them of the genuineness of the signatures, notwithstanding the positive denial of the defendant.  These notes were placed in the hands of the jury for that purpose, and the defendant duly excepted.

The comparison of handwriting is permitted, where different instruments relevant to the controversy have been introduced for other purposes.  (*Van Wyck* v. *McIntosh*, 14 N. Y., 442; *Dubois* v. *Baker*, 30 id., 355.)

But in the present case the notes dated in October, 1863, were introduced for no purpose but that of comparison.

The plaintiff has suggested that they were competent to show the course of dealing between the maker and the indorser. There was no dispute on that point. The defendant had for several years previous to October 22d, 1863, loaned his paper to O'Donnell for large amounts. That fact did not, however, tend to prove the genuineness of the defendant's signature to the note in suit, nor authorize the use of the name of the defendant, nor estop him from denying it as spurious. The evidence of Mr. Bergen was wholly immaterial and incompetent; nor does it appear that the judge or counsel authorized or suggested any use of the said October notes as evidence, except for the purpose of comparison.

The January notes were also submitted to the jury as evidence tending to prove an authorization, and of leading parties to believe the note in suit to be genuine.

In addition to the evidence of Mr. Bergen, it appeared that Mr. Farran, a broker's clerk, called on the defendant with the notes after they had been sold, and in answer to an inquiry by Mr. Farran, the defendant stated that he would see Mr. O'Donnell, and have him attend to the notes.

I am wholly at a loss to perceive how an authorization, or anything tending to lead parties to believe the note in suit to be genuine, could be legitimately drawn from the evidence of Mr. Bergen or Mr. Farran. The claim amounts to this : that, although the note in suit and the two notes of January, 1864, be conceded to have been forgeries, that the omission of the defendant to make that claim when the notes were shown to him, and repudiate them on that ground, justifies the inference that they were authorized, or that parties were led thereby to believe them to be genuine. This would be true only in case the plaintiff had been proven to have received the note in suit after such conversations. But no such evidence was offered. There was nothing tending to connect the evidence of Bergen or Farran with the case. It cannot

be claimed that their evidence was material or competent to contradict the defendant as a witness, because it related to a collateral and immaterial issue.

There were other errors in the admission of evidence, but those which have been mentioned were quite sufficient to require the reversal of the judgment entered on the verdict.

On the plaintiff's stipulation, the judgment must now be absolute, with costs.

All concur; LOTT, Ch. C. not sitting.

Order affirmed, and judgment accordingly.